UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JENNI ELLIS,<br><br>          Plaintiff,<br><br>   v.<br><br>PIERCE COUNTY, by and through PIERCE COUNTY SHERIFF'S OFFICE, LEVI REDDING AND JANE DOE REDDING, and JOHN/JANE DOES 1-5,<br><br>          Defendants. | CASE NO. C22-5142 BHS<br><br>ORDER |

This matter is before the Court on Defendant Pierce County's Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss, Dkt. 12, and Defendant Levi Redding's[1] Rule 12(b)(6) Motion to Dismiss, Rule 56 Motion for Summary Judgment With Prejudice, and Motion For Stay of Discovery, Dkt. 20.

//

//

---

[1] Both Levi Redding and Jane Doe Redding are defendants in this case. For clarity, the Court refers to them in the singular as "Redding."

# I. INTRODUCTION

Shortly after midnight on March 12, 2019, Pierce County Sheriff's Deputies responded to a domestic dispute call from Ellis's boyfriend, Eric Vankirk. Dkt. 1, ¶¶ 3.1–3.2. After the deputies arrived at his home, Vankirk informed them that Ellis had hit him, and inadvertently hit his 17-year-old son when he tried to intervene in the dispute, while she was intoxicated. *Id.* ¶ 3.3. He also informed the deputies that, while he was on the phone with the 911 operator, Ellis left the house in her pajamas and slippers into the pouring rain. *Id.* Vankirk then stressed that Ellis weighed approximately 115 pounds, was unarmed, and was not a real physical threat. *Id.*

The deputies took Vankirk's statement and, according to the complaint, "noted in the police report that there were no real visible injuries to Mr. Vankirk or his 17-year-old son." *Id.* ¶ 3.4. Indeed, the police report notes that Vankirk and his son sustained only minor visible injuries. Specifically, it states that both Vankirk and his son had "redness on their left eyes" and that there was "some redness that looked to . . . be a fresh [sic] markings." Dkt. 12 at 30.

After the deputies took his statement, Vankirk reemphasized that Ellis was not a real physical threat and that the purpose of his call was to deescalate the situation. Dkt. 1, ¶ 3.4. However, the situation did not deescalate. Instead, the deputies called a K-9 unit to search for and apprehend Ellis. *Id.* When the K-9 unit arrived outside of his home, Vankirk attempted to go outside to intervene but the deputies prevented him from doing so. *Id.*

1       Deputy Redding then deployed a canine, Zepp, to locate and seize Ellis by biting

2  and holding her. *Id*. ¶¶ 3.5, 6.5, 6.6. Shortly thereafter, Zepp located Ellis and

3  continuously bit and mauled her arm. *Id.* The biting and mauling lasted until Redding was

4  able to retake control of Zepp. *Id.* ¶ 6.5. As a result of this incident, Ellis suffered severe

5  trauma and permanent injuries to her arm. *Id.* ¶ 3.5.

6       Ellis sued Redding and Pierce County, alleging three causes of action: a § 1983

7  claim against Redding for violating her Fourth Amendment right to be free from

8  unreasonable seizure; a *Monell* claim against the County for having a policy, custom, or

9  practice of failing to adequately train, supervise, or communicate to its officers regarding

10 the constitutional use of police canines; and negligence claims against Redding and the

11 County. Dkt. 1, ¶¶ 5.1–6.8.

12      Both Redding and the County seek to dismiss these claims with prejudice under

13 Rule 12(b)(6). Dkts. 12 (Pierce County), 20 (Redding). In his motion to dismiss, Redding

14 also asserts that he is entitled to qualified immunity on Ellis's excessive force claim and

15 that, until the Court resolves this defense, he is entitled to a stay of discovery. Dkt. 20 at

16 1, 4–6. Additionally, Redding moves for summary judgment on the negligence claim. *Id.*

17 at 7–10.

18                          **II. DISCUSSION**

19 **A.    Rule 12(b)(6) Standard.**

20      Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either the lack of a

21 cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal

22 theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A

plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

Although courts must "accept all material allegations of fact as true and construe the complaint in the light most favorable to the non-moving party, . . . 'conclusory allegations of law and unwarranted inferences' will not defeat an otherwise proper motion to dismiss." *Vazquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (quoting *Schmier v. U.S. Court of Appeals for the Ninth Circuit*, 279 F.3d 817, 820 (9th Cir. 2002)). Put differently, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *id.*).

**B.    Redding's Motion to Dismiss the Excessive Force Claim.**

Redding asserts that the complaint fails to allege a plausible claim that he violated Ellis's right to be free from unreasonable seizure. Dkt. 20 at 2. Additionally, Redding contends that he is entitled to qualified immunity because he did not violate a clearly established right by deploying Zepp to bite and apprehend Ellis. *Id.* at 5–6. Ellis responds that Redding violated a clearly established right because she did not pose an immediate

threat of harm and because his use of force was otherwise unnecessary and unjustified. Dkt. 27 at 13–14. The Court agrees with Ellis.

Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine "protect[s] officers from the sometimes 'hazy border' between excessive and acceptable force." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (parenthetically quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). A two-part test resolves claims of qualified immunity by determining whether plaintiffs have alleged facts that "make out a violation of a constitutional right" and, if so, whether the "right at issue was clearly established at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal quotation omitted).

Turning to the first part of this test, in *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court set forth factors for determining whether an officer's use of force violates a person's Fourth Amendment right to be free from unreasonable seizure. Specifically, courts consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 397. "[T]he most important single element of the three specified factors" is "whether the suspect poses an immediate threat to the safety of the officers or others." *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994).

1    The complaint raises a plausible claim that Redding violated Ellis's right to be free
2    from unreasonable seizure. Most importantly, the complaint alleges that, when Redding
3    deployed Zepp, Ellis did not pose an immediate threat to the safety of the deputies or
4    others. Before Redding deployed Zepp, he knew that Ellis was "115 pounds, not a real
5    physical threat, unarmed, in her pajamas, and intoxicated." Dkt. 1, ¶ 3.3. Then, after the
6    deputies took his statement, Vankirk again "emphasized to the deputies that Jenni was not
7    a real physical threat and the purpose of the 9-1-1 call was to deescalate the situation." *Id.*
8    ¶ 3.4. Vankirk "was then surprised to discover that the Deputies decided to call a K-9 unit
9    to apprehend" Ellis. *Id.* When Vankirk "saw the K-9 unit arrive outside his home," he
10   "attempted to go outside to intervene, but was prevented from doing so by the Deputies."
11   *Id.* Nothing from Vankirk's statements to the deputies or from his behavior upon their
12   arrival indicated that Ellis posed an immediate threat to the safety of the deputies or
13   others.

     Furthermore, the police report's description of the injuries sustained by Vankirk
15   and his son plausibly demonstrate that Ellis did not pose an immediate threat of harm.[2]
16   Indeed, the report states that both Vankirk and his son had "redness on their left eyes"
17   and "some redness that looked . . . to be a fresh [sic] markings." Dkt. 12 at 30. Given that

---

[2] When ruling on a 12(b)(6) motion to dismiss, courts may consider documents that are not physically attached to the complaint if "the documents' 'authenticity . . . is not contested' and 'the plaintiff's complaint necessarily relies' on them." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998)). Here, the complaint necessarily relies on the police report by stating that the deputies "noted in the police report that there were no real visible injuries to Mr. Vankirk or his 17-year-old son." Dkt. 1, ¶ 3.4. Therefore, in ruling on Redding's motion to dismiss, the Court properly considers the police report only insofar as the report describes the injuries sustained by Vankirk and his son.

1  the injuries sustained by Vankirk and his son were minor, Ellis plausibly alleges both that

2  she did not pose an immediate threat of harm and, in turn, that Redding acted

3  unreasonably by deploying Zepp to bite and apprehend her. *See Chew*, 27 F.3d at 1441.

4      Next, the complaint plausibly alleges that the crime committed was not so severe

5  as to warrant the deployment of a police canine to bite Ellis. Vankirk informed the

6  deputies that Ellis had hit him, and inadvertently hit his 17-year-old son when he tried to

7  intervene in the dispute, while she was intoxicated. Dkt. 1, ¶ 3.3. As already explained,

8  this conduct resulted in two minor physical injuries to Vankirk and his son. Under these

9  circumstances, Ellis raises a plausible claim that the crime was not severe enough to

10  justify Redding's decision to deploy Zepp to bite and apprehend her. *See Marley v. City*

11  *of Allentown*, 774 F. Supp. 343, 345–46 (E.D. Pa. 1991) (ruling that the use of a police

12  canine to pursue a suspected misdemeanant who posed no threat to the officer was

13  unreasonable), *aff'd*, 961 F.2d 1567 (3d Cir. 1992).

14      Finally, the complaint plausibly alleges that Ellis was neither actively resisting

15  arrest nor attempting to evade arrest by flight when Redding deployed Zepp. Indeed, after

16  the deputies arrived at the residence, Vankirk informed them that, "while he was on the

17  phone with 9-1-1, Jenni suddenly left the house in her pajamas and slippers into the

18  pouring rain." Dkt. 1, ¶ 3.3. Notably, there is no indication in the complaint that, when

19  Ellis departed the residence, she *knew* that Vankirk was on the phone with 911, that

20  deputies would arrive at the residence in response to the 911 call, or that she would be

21  placed under arrest upon their arrival. As such, the complaint makes a plausible showing

22

that the deputies had no reasonable basis to believe that Ellis departed the residence to evade arrest by flight.

Because each *Graham* factor weighs in favor of Ellis, the complaint makes a plausible showing that Redding, by deploying Zepp to bite and apprehend her under these circumstances, violated her Fourth Amendment right to be free from unreasonable seizure.

Next, the Court addresses the second part of the qualified immunity test: whether the right at issue was clearly established. For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Although this does "not require a case directly on point, . . . existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Consistent with the *Graham* factors, Ninth Circuit precedent clearly establishes that police officers use excessive force when they deploy a canine to bite a suspect who neither poses a threat of harm nor attempts to evade or resist arrest. *See Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (holding that a police officer who allowed a canine to bite a suspect for an "excessive duration" violated clearly established law); *Mendoza v. Block*, 27 F.3d 1357, 1362 (9th Cir. 1994) (stating that "excessive force has been used when a deputy sics a canine on a handcuffed arrestee who has fully surrendered and is completely under control").

1  As already explained, the complaint plausibly alleges that, when Redding
2  deployed Zepp to bite and apprehend Ellis, the deputies had received knowledge that she
3  did not pose a threat of harm and that she had not attempted to evade arrest by flight. As
4  such, the complaint states a plausible claim that Redding violated a clearly established
5  right by deploying Zepp under these circumstances. *See Watkins*, 145 F.3d at 1093;
6  *Mendoza*, 27 F.3d at 1362.

7  Accordingly, Redding's motion to dismiss Ellis's excessive force claim is
8  DENIED. Furthermore, because the complaint contains sufficient factual allegations to
9  overcome the qualified immunity defense, Redding's motion to stay discovery pending
10 the resolution this defense is also DENIED.

11 **C.     The County's Motion to Dismiss the *Monell* claim.**

12 The County moves under Rule 12(b)(6) to dismiss with prejudice[3] Ellis's *Monell*
13 claim, which alleges that the County has a policy, custom, or practice of failing to
14 adequately train, supervise, or communicate to its officers regarding the constitutional
15 use of police canines. The County argues that the complaint does not contain sufficient
16 factual allegations to support this claim. In response, Ellis argues that she pleads a
17 plausible *Monell* claim.[4] The Court agrees with the County.

---

[3] In so doing, the County does not raise any argument as to whether Ellis should be granted leave to amend her complaint.

[4] In her response, Ellis also filed a declaration of her attorney, attached with a copy of two supplemental police reports as well as photographs of Ellis, Vankirk, and Vankirk's son (Dkt. 16), a declaration of Vankirk (Dkt. 17), and a declaration of Ellis, attached with photographs of her injuries (Dkt. 18). In its reply, the County moves to strike these declarations and attached photographs but asserts that the Court may take judicial notice of the supplemental police reports. Dkt. 19 at 2–3, 5.

To set forth a claim against a municipality under 42 U.S.C. § 1983, a plaintiff must show that the defendant's employees or agents acted through an official custom, pattern or policy that permits deliberate indifference to, or violates, the plaintiff's civil rights; or that the entity ratified the unlawful conduct. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978); *Larez v. City of Los Angeles*, 946 F.2d 630, 646–47 (9th Cir. 1991). Under *Monell*, a plaintiff must allege (1) that a municipality employee violated a constitutional right; (2) that the municipality has customs or policies that amount to deliberate indifference; and (3) those customs or policies were the "moving force" behind the constitutional right violation. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). A municipality is not liable simply because it employs a tortfeasor. *Monell*, 436 U.S. at 691. A municipality may be liable for inadequate police training when "such inadequate training can justifiably be said to represent municipal policy" and the resulting harm is a "highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006) (quoting *Bd. of County Comm'rs*, 520 U.S. at 409).

Regarding the *Monell* claim, the complaint provides:

---

When ruling on a Rule 12(b)(6) motion to dismiss, district courts generally may not consider evidence outside of the pleadings. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). The Court does not consider any of the additional documents and photographs filed by Ellis in ruling on the County's motion to dismiss, including the supplemental police reports. *See id.* at 909 (citing *Pina v. Henderson*, 752 F.2d 47, 50 (2d Cir. 1985) (holding that the existence and content of a police report are not properly the subject of judicial notice)). However, considering Redding's motion for summary judgment, the Court declines to strike these documents from the record. Accordingly, the County's motion to strike the declarations and attached photographs is DENIED.

ORDER - 10

> The defendant Pierce County, acting by and through the Pierce County Sheriff's Office and its officers in their official capacities, as a matter of policy, custom or practice: a) failed to adequately train its officers in the limits the constitution places on the use of police dogs, or alternatively, failed to communicate its policy regarding constitutional use of police dogs to its police officers; b) failed to adequately supervise its defendant officers with respect to such officers' constitutional deprivations; and c) failed to address these failures despite being informed of such policy and customs resulting in multiple innocent citizens being attacked in the same or similar fashion.

Dkt. 1, ¶ 6.4. The complaint also states that "[t]he utilization of bite and hold techniques in the training of K-9 units constitutes a policy and practice that led to the deprivation of the plaintiff Jenni Ellis's civil rights." *Id.* ¶ 6.7.

The complaint does not contain any specific factual allegations in support of these assertions. It is well established that a complaint must do more than make "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Because Ellis does not plead sufficient facts in support of her allegations, she does not plead a plausible *Monell* claim.

However, on a 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). Ellis requests leave to amend her complaint. Dkt. 15 at 14–15. The Court concludes that Ellis's *Monell* claim could possibly be cured by the allegation of additional facts. In amending her complaint, Ellis must state specific facts raising a plausible claim that the County had a constitutionally deficient custom or policy relating to its use of police canines that was

the "moving force" behind Redding violating her Fourth Amendment right to be free from unreasonable seizure.

Accordingly, the County's motion to dismiss with prejudice Ellis's *Monell* claim is GRANTED in part and DENIED in part. The *Monell* claim is DISMISSED without prejudice and Ellis is GRANTED leave to file an amended complaint.

**D.     Motions to Dismiss the Negligence Claims**

Both Redding and the County move under Rule 12(b)(6) to dismiss with prejudice[5] Ellis's negligence claims. Dkt. 12 at 15–18; Dkt. 20 at 1, 10. Ellis responds that she plausibly alleges that Redding acted negligently by deploying Zepp under circumstances demonstrating that she did not pose a threat of harm. Dkt. 15 at 14. Additionally, Ellis asserts that the County is vicariously liable for Redding's negligence. *Id.* The Court agrees with Ellis in both respects.

"Negligence is the failure to exercise reasonable or ordinary care," which is defined as "that degree of care which an ordinarily careful and prudent person would exercise under the same or similar circumstances or conditions." *Gordon v. Deer Park Sch. Dist. No. 414*, 71 Wn.2d 119, 122 (1967). Here, the complaint alleges that Redding deployed Zepp after being informed that Ellis was 115 pounds, not a real physical threat, wearing pajamas, and unarmed. Dkt. 1, ¶ 3.3. Under these circumstances, it is plausible that Redding failed to exercise reasonable care by deploying Zepp to bite and apprehend Ellis.

---

[5] Redding contends that the Court should dismiss this claim with prejudice because any amendment to Ellis's complaint would be futile. Dkt. 30 at 5–6.

1       Furthermore, because Redding was acting within the scope of his employment
2 when he deployed Zepp, Ellis also raises a plausible claim that the County is vicariously
3 liable for Redding's negligence. *See Wilcox v. Basehore*, 187 Wn.2d 772, 783 (2017)
4 ("Under respondeat superior, an employer is vicariously liable to third parties for torts
5 committed by the servant within the scope of employment." (citing Restatement (Second)
6 of Agency § 219 (Am. L. Inst. 1958))).

7       Accordingly, Redding's motion to dismiss pursuant to Rule 12(b)(6) the
8 negligence claim advanced against him is DENIED. Additionally, because Ellis plausibly
9 alleges that the County is vicariously liable for Redding's negligence, Dkt. 15 at 14, the
10 County's motion to dismiss the negligence claim alleged against it is also DENIED.

11 **E.**     **Redding's Motion for Summary Judgment on Ellis's Negligence Claim.**

12       Redding also moves for summary judgment on Ellis's negligence claim. Dkt. 20 at
13 1, 10. He argues that he is immune from this claim under RCW 4.24.410(2)—a statute
14 providing immunity to dog handlers who use police dogs in the line of duty in good faith.
15 *Id.* at 9–10. In response, Ellis filed a declaration of Vankirk wherein he stated that the
16 police informed him that the canine was being deployed to "teach Jenni a lesson." Dkt.
17 29, ¶ 5. Because genuine issues of material fact exist as to whether Redding deployed
18 Zepp in good faith, the Court declines to grant summary judgment on this claim.

19       Summary judgment is proper if the pleadings, the discovery and disclosure
20 materials on file, and any affidavits show that there is "no genuine dispute as to any
21 material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ.
22 P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence

in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

There is no requirement that the moving party negate elements of the non-movant's case. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Once the moving party has met its burden, the non-movant must then produce concrete evidence, without merely relying on allegations in the pleadings, that there remain genuine factual issues. *Anderson*, 477 U.S. at 248.

Redding contends that he is statutorily immune from liability under RCW 4.24.410(2). This statute provides that "[a]ny dog handler who uses a police dog in the line of duty in good faith is immune from civil action for damages arising out of such use of the police dog or accelerant detection dog." RCW 4.24.410(2). Redding asserts that he

deployed Zepp in good faith as a matter of law. Dkt. 20 at 9. This is so, Redding argues, because the "deployment of a police dog to 'bite and hold' a non-responding suspect in a violent crime is lawful." Dkt. 20 at 9.

Ellis disputes this assertion. She relies on a declaration of her boyfriend, Vankirk, who explains: "[W]hen I pressed the police about why they were so intent on deploying the K-9 because it seemed so unnecessary and unreasonable, I was told that the K-9 was being deployed to teach Jenni a lesson." Dkt. 29, ¶ 5. This statement alone raises a genuine issue of material fact as to whether Redding used Zepp in good faith.

Redding argues that the Court should not consider Vankirk's declaration because it does "not appear to be signed in the manner required by LCR 10(d)(8),[6] LCR 11(a) and Section III/L of the Western Division's Electronic Filing Procedures." Dkt. 30 at 3. The declaration is signed by Vankirk with an electronic signature. Dkt. 29 at 2. None of the rules cited by Redding prohibit the use of such a signature. To the contrary, LCR 11(a) provides, in pertinent part: "A document signed electronically (by either a digital signature or by an attorney using the 's/Name' convention) has the same force and effect as if the person had affixed a signature to a paper copy of the document, unless an original document is otherwise required." Additionally, the Electronic Filing Procedures provide: "If the original document requires the signature of a non-registered e-filer, the filing party may . . . utilize an electronic signature that is recognized as valid under

---

[6] The Local Civil Rules do not contain a Rule 10(d)(8). The Court assumes that Redding intended to cite to LCR 10(e)(8), which provides merely that "[a]ll documents filed with the court shall be in accordance with the Electronic Filing Procedures for Civil and Criminal Cases adopted by General Order of the court."

federal law." Redding fails to establish that Vankirk's declaration does not satisfy these requirements.

Redding also contends that the Court should not consider Vankirk's statement that "the police" deployed Zepp to "teach Jenni a lesson" because, he claims, it is irrelevant, amounts to inadmissible hearsay, and is not based on the out-of-court speaker's personal knowledge. Dkt. 30 at 3. But this statement is admissible as an opposing party's statement under Fed. R. Evid. 801(d)(2) to prove that Redding did not deploy Zepp in good faith. Indeed, Vankirk stated that "the police" informed him that the canine was being deployed to "teach Jenni a lesson." Dkt. 29, ¶ 5. Viewed in the light most favorable to Ellis, "the police" includes Redding.[7] Accordingly, the alleged statement is sufficient to raise a fact issue on whether Redding deployed Zepp in good faith.

In any event, even if the Court did not consider Vankirk's declaration, a fact issue exists as to whether Redding deployed Zepp in good faith. In a supplemental police report, Redding explained why he decided to deploy Zepp:

> Due to the probable cause to arrest for two counts of assault, the fact that on prior incidents she returned to the residence, I decided to use K9-Zepp in an attempt to locate Jenni. I believed that if not found and apprehended Jenni would come back to the residence and possibly further assault the victims. Please note that it was substantially raining at the time and Jenni's clothing description was not suitable for the weather which only added to my belief she would return.

Dkt. 16 at 19.

---

[7] Redding moves to strike the declaration of Vankirk, Dkt. 29, and the supplemental declaration of Ellis, Dkt. 28. Ellis's supplemental declaration is also signed with an electronic signature. *Id.* at 2. Redding's motion to strike is DENIED. The Court notes, however, that it does not consider these declarations in ruling on the Rule 12(b)(6) motions to dismiss.

In other words, Redding deployed a canine to bite Ellis because he believed that Ellis would return to the residence and, considering her dress and weather conditions, it would not likely have been a long wait. This is not persuasive, particularly on summary judgment. There is no apparent reason why Redding could not have instead simply waited for Ellis to return to the residence so that he could arrest her through less harmful means. Under these circumstances, Redding's own explanation for deploying Zepp raises a fact issue as to whether he used Zepp in good faith.

Accordingly, Redding's motion for summary judgment regarding Ellis's negligence claim is **DENIED**. Additionally, Redding's motion to stay discovery on Ellis's negligence claim is also **DENIED**.[8]

## III.  ORDER

Therefore, it is hereby **ORDERED** that Redding's Rule 12(b)(6) Motion to Dismiss, Rule 56 Motion for Summary Judgment, and Motion for Stay of Discovery, Dkt. 20, is **DENIED**. The County's Motion to Dismiss Pursuant to Rule 12(b)(6), Dkt. 12, is **GRANTED in part** and **DENIED in part**. The *Monell* claim is **DISMISSED without prejudice** and Ellis is **GRANTED** leave to file an amended complaint. Ellis may file an amended complaint by October 17, 2022.

//

---

[8] Redding's request to stay discovery on Ellis's negligence claim was also improperly made for the first time in his reply brief. *Compare* Dkt. 20 at 1, 3–4, 7, 10 *with* Dkt. 30 at 13. It is well established that courts need not consider issues raised for the first time in a reply brief. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007); *Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996) (per curiam). In any event, because a fact issue exists as to whether Redding used Zepp in good faith, Redding is not entitled to a stay of discovery on this claim.

Dated this 26th day of September, 2022.

_____
BENJAMIN H. SETTLE
United States District Judge