UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JENNI ELLIS,

                Plaintiff,

v.

PIERCE COUNTY, et al.,

                Defendants.

CASE NO. C22-5142 BHS

ORDER

This matter is before the Court on Defendants Pierce County and Levi Redding's[1] Federal Rules of Civil Procedure 12(b)(6) and 56 Motions to Dismiss All Claims against Pierce County and All State Claims against Redding in the Amended Complaint, Dkt. 36.

## I.   BACKGROUND

Most of the facts relevant to this motion are set forth in the order on Pierce County and Redding's first motions to dismiss and Redding's first motion for summary judgment. Dkt. 34 at 2–3. In that order, the Court (1) denied Redding's motion to dismiss Ellis's excessive force claim and negligence claim alleged against him, (2) denied the

---

[1] Both Levi Redding and Jane Doe Redding are defendants in this case. For clarity, the Court refers to them in the singular as "Redding."

County's motion to dismiss the vicarious liability claim, (3) denied Redding's summary judgment motion on the negligence claim alleged against him, and (4) granted in part the County's motion to dismiss the *Monell* claim, dismissing that claim without prejudice and granting Ellis leave to amend the complaint. *Id.* at 4–17.

Ellis amended the complaint, adding new allegations related to her *Monell* claim. Dkt. 35, ¶¶ 3.7, 5.4. The County moves to dismiss the *Monell* claim, asserting that Ellis still fails to plead specific facts in support of this claim. Dkt. 36 at 3–9. The County also moves to dismiss any direct negligence claim advanced against it. *Id.* at 14–16. Finally, Redding—for a second time—moves for summary judgment on Ellis's negligence claim against him, raising various arguments that he did not raise in his first summary judgment motion. *Compare id.* at 9–14 *with* Dkt. 20 at 7–10. He also moves—again for a second time—to dismiss this negligence claim pursuant to Rule 12(b)(6). Dkt. 36 at 9–14; *see also* Dkt. 20 at 7.

## II.   DISCUSSION

### A.    Rule 12(b)(6) Standard

Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

1    Although courts must "accept all material allegations of fact as true and construe

2    the complaint in the light most favorable to the non-moving party, . . . 'conclusory

3    allegations of law and unwarranted inferences' will not defeat an otherwise proper

4    motion to dismiss." *Vazquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007)

5    (quoting *Schmier v. U.S. Ct. of Appeals for the Ninth Cir.*, 279 F.3d 817, 820 (9th Cir.

6    2002)). Put differently, "a plaintiff's obligation to provide the grounds of his entitlement

7    to relief requires more than labels and conclusions, and a formulaic recitation of the

8    elements of a cause of action will not do. Factual allegations must be enough to raise a

9    right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

10   (2007) (cleaned up). This requires a plaintiff to plead "more than an unadorned, the-

11   defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *id.*).

12   **B.    The County's Renewed Motion to Dismiss the *Monell* Claim is Granted**

13       The County renews its motion to dismiss Ellis's *Monell* claim. Dkt. 36 at 3–9. It

14   asserts that the amended complaint—like the original complaint—provides merely

15   conclusory statements in support of this claim. *Id.* Ellis contends that the factual

16   allegations in the amended complaint are sufficiently specific to support a *Monell* claim.

17   Dkt. 37 at 3–8. She also argues that, if this claim is dismissed, it should again be

18   dismissed with leave to amend. *Id.* at 8.

19       To set forth a claim against a municipality under 42 U.S.C. § 1983, a plaintiff

20   must show that the defendant's employees or agents acted through an official custom,

21   pattern or policy that permits deliberate indifference to, or violates, the plaintiff's civil

22   rights; or that the entity ratified the unlawful conduct. *See Monell v. Dep't of Soc. Servs.*,

436 U.S. 658, 690–91 (1978); *Larez v. City of Los Angeles*, 946 F.2d 630, 646–47 (9th Cir. 1991). Under *Monell*, a plaintiff must allege: (1) that a municipal employee violated a constitutional right; (2) that the municipality has customs or policies that amount to deliberate indifference; and (3) that those customs or policies were the "moving force" behind the constitutional right violation. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403–04 (1997).

A municipality may be liable for inadequate police training when "such inadequate training can justifiably be said to represent municipal policy" and the resulting harm is a "highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006) (quoting *Bd. of County Comm'rs*, 520 U.S. at 409). However, a municipality is not liable simply because it employs a tortfeasor. *Monell*, 436 U.S. at 691. Accordingly, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). When a plaintiff alleges that a defendant had an unwritten policy or custom, the plaintiff must sufficiently allege that the "unwritten policy" is "so 'persistent and widespread' that it constitutes a 'permanent and well settled' practice." *Gonzalez v. Cnty. of Merced*, 289 F. Supp. 3d 1094, 1098 (E.D. Cal. 2017) (quoting *Monell*, 436 U.S. at 691).

Ellis still fails to state a plausible *Monell* claim. The Court's prior order explained that, to state a plausible *Monell* claim, "Ellis must state specific facts raising a plausible

1    claim that the County had a constitutionally deficient custom or policy relating to its use

2    of police canines that was the 'moving force' behind Redding violating her Fourth

3    Amendment right to be free from unreasonable seizure." Dkt. 34 at 11–12.

4           In support of her *Monell* claim, Ellis's amended complaint alleges:

5           Defendant Pierce County, by and through the Pierce County Sheriff's
             Office, reviewed the K-9 attack involving Jenni Ellis and ratified Deputy
6           Redding's K-9 deployment and the attack. Pierce County also found that
             Deputy Redding did not violate any Pierce County policy; in fact, Pierce
7           County enacted a policy and practice of deploying K-9s to find and bite
             alleged perpetrators of domestic violence in any alleged domestic violence
8           incident – regardless of the physical threat to the alleged victims or officers
             – where the alleged perpetrator leaves the residence, but is believed to be in
9           the general area and where there is some likelihood that the alleged
             perpetrator will return to the residence. This policy and practice was the
10          moving force behind the K-9 attack on Ellis.

11   Dkt. 35, ¶ 3.7.

12          The amended complaint also states:

13          The defendant Pierce County, acting by and through the Pierce County
             Sheriff's Office and its officers in their official capacities, as a matter of
14          policy, custom, or practice: a) failed to adequately train its officers in the
             limits the constitution places on the use of police dogs; b) failed to
15          adequately supervise its defendant officers with respect to such officers'
             constitutional deprivations; and c) failed to address these failures despite
16          being informed [that] such policy and customs resulted in multiple innocent
             citizens being attacked in the same or similar fashion. More specifically,
17          here, Pierce County's policy and practice of using K-9 bite and hold
             techniques against alleged perpetrators of domestic violence – regardless of
18          the threat to alleged victims or officers – constitutes a policy and practice
             that permits deliberate indifference to and/or violates the civil rights of
19          these alleged perpetrators, including the plaintiff Jenni Ellis.

20   *Id.* ¶ 5.4.

21          Ellis's allegation that the County ratified Redding's conduct is insufficient to

22   survive a motion to dismiss. "[T]he ratification theory for *Monell* liability is not premised

on the ratification itself creating liability after the fact of injury; but rather, . . . ratification

is merely a method of proving a *preexisting* government 'policy, custom, or practice' that

*proximately causes* a plaintiff's constitutional deprivation." *German v. Roberts*, No. 15-

cv-5237 BHS-DWC, 2017 WL 6547472, at *2 (W.D. Wash. Dec. 22, 2017) (emphasis

added). Accordingly, it does not matter whether the County simply ratified Redding's

conduct after the incident and found that his conduct did not violate any existing policy.

Indeed, "*Monell* liability attaches 'when implementation of . . . official policies or

established customs *inflicts* the constitutional injury.'" *Id.* at *3 (emphasis in original)

(quoting *Monell*, 436 U.S. at 708). "To conclude otherwise would undermine the

Supreme Court's instruction 'that a municipality can be liable under § 1983 only where

its policies are the *moving force* [behind] the constitutional violation.'" *Id.* (emphasis

added) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)). Because Ellis

does not plead any specific facts indicating that the County had a constitutionally

deficient policy before Redding deployed the canine, her ratification claim is not

plausible.

Moreover, instead of alleging specific facts in support of her claim that the County

had a constitutionally deficient policy, custom, or practice, Ellis alleges merely a more

specific policy—namely, that the County had a policy of deploying canines under the

exact circumstances that Redding deployed a canine on Ellis. This also does not suffice to

survive a motion to dismiss. Although Ellis states that the County's "policy and customs

resulted in multiple innocent citizens being attacked in the same or similar fashion," Dkt.

35, ¶ 5.4, she does not allege any specific facts indicating that the Pierce County Sheriff's

Office has deployed canines under similar circumstances on any other occasion. Therefore, this statement is merely conclusory and insufficient to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678 (stating that a complaint must do more than make "threadbare recitals of the elements of a cause of action, *supported by mere conclusory statements*" (emphasis added)).

Finally, the only specific factual allegations alleged in the amended complaint regard the incident during which Redding deployed a canine on Ellis. *See* Dkt. 35 at 3–5. But *"*[l]iability for improper custom may not be predicated on isolated or sporadic incidents." *Trevino*, 99 F.3d at 918. This is because "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Thus, Ellis fails to plead a plausible *Monell* claim. Additionally, because the Court has already provided Ellis an opportunity to amend her complaint and she fails to explain how she could cure this deficiency through another amendment, any further amendment would be futile. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051–52 (9th Cir. 2008).

Accordingly, the County's motion to dismiss the *Monell* claim is GRANTED and that claim is DISMISSED with prejudice.

**C.      The County's Motion to Dismiss Any "Direct Negligence" Claim is Granted**

The County also moves to dismiss any claim that it is directly negligent for Ellis's injuries by negligently hiring, training, and retaining its K-9 units. Dkt. 36 at 14–16. Ellis contends that the Court already ruled on this negligence claim in its prior order. Dkt. 37 at 8. However, the Court's prior order did not address whether Ellis raised a plausible

claim that the County was directly negligent in causing her injuries. The Court did not

address this claim because Ellis previously specified, regarding her negligence claim

against the County, that she was alleging only a claim of vicarious liability, not a claim of

direct negligence.

In its first motion to dismiss, the County argued that Ellis's original complaint

"makes the conclusory assertion that the County was *directly* negligent" in causing Ellis's

injuries. Dkt. 12 at 17 (emphasis added). Ellis responded:

> Pierce County fails to acknowledge that it is *vicariously liable* for the
> negligence of its employees, including Defendant Redding. *The Court
> simply has to determine* whether the allegations in Plaintiff's Complaint
> sufficiently state a claim of negligence. Could a reasonable person find that
> Deputy Redding negligently deployed a K-9 on an unarmed 115 pound
> woman who just left the house she lived in after she had a fight with her
> boyfriend, where the boyfriend stated that she was not a physical threat,
> when no K-9 warning were given to her while she was in the area, where
> she's unarmed, and has no violent criminal history? Any reasonable person
> could find negligence in this case. Defendant Pierce County's argument
> that Plaintiff's claims of negligence must be dismissed pursuant to Rule
> 12(b)(6) simply falls flat and should be rejected by the Court.

Dkt. 15 at 14 (emphasis added).

Ellis provided no argument in support of a direct negligence claim against the

County. *See id.* Furthermore, by informing the Court that it "simply has to determine"

whether the complaint alleges a plausible claim that the County is *vicariously liable* for

*Redding's* negligent conduct, Ellis communicated that she was not pursuing a direct

negligence claim against the County.

But even if Ellis desires to pursue a negligent training, hiring, and supervision

claim against the County, this claim fails. "Washington law is . . . clear: where the parties

agree that an employee acted within the scope of employment, a negligent training,

hiring, or supervision claim against the employer is 'redundant.'" *Saldana v. City of*

*Lakewood*, No. 11-cv-6066 RBL, 2012 WL 2568182, at *3 (W.D. Wash. July 2, 2012)

(quoting *Gilliam v. Dep't of Soc. & Health Servs.*, 89 Wn. App. 569, 585 (1998)). Indeed,

in *Gilliam*, the court explained: "If [the plaintiff] proves [the employee]'s liability, the

State will also be liable. If [the plaintiff] fails to prove [the employee]'s liability, the State

cannot be liable even if its supervision was negligent." 89 Wn. App. at 585.

Accordingly, to the extent that Ellis alleges a negligent training, hiring, and

supervision claim against the County, that claim is redundant and unnecessary. *See*

*Saldana*, 2012 WL 2568182, at *3. Accordingly, the County's motion to dismiss any

direct negligence claim alleged against it is GRANTED and any such claim is

DISMISSED with prejudice.

**D.     Redding's Second Motion to Dismiss the Negligence Claim Alleged Against Him is Denied**

Redding moves for a second time to dismiss Ellis's negligence claim under Fed.

R. Civ. P. 12(b)(6). Dkt. 36 at 9–14; *see also* Dkt. 20 at 7. Ellis contends that this motion

amounts to an improper and untimely motion for reconsideration and should be denied.

Dkt. 37 at 8.

For several reasons, Redding's motion to dismiss is denied. First, Redding

improperly moves to dismiss the negligence claim for a second time because he raises

arguments that he could have raised in his first motion to dismiss that claim. Generally,

"a party that makes a motion under [Rule 12] must not make another motion under this

1   rule raising a defense or objection that was available to the party but omitted from its

2   earlier motion." Fed. R. Civ. P. 12(g)(2). Accordingly, "[t]he filing of an amended

3   complaint will not revive the right to present by motion defenses that were available but

4   were not asserted in timely fashion prior to the amendment of the pleading." 5C Charles

5   Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1388 (3d ed. 2022).

6       In any event, Redding's arguments fail on the merits. Redding first asserts that

7   Ellis's negligence claim must be dismissed because "the factual basis for the Amended

8   Complaint's negligence and § 1983 claims *both* 'reallege[] and hereby incorporate[]' the

9   *same factual allegations* of intentional conduct for each."[2] Dkt. 36 at 10 (emphasis in

10  original) (quoting Dkt. 35, ¶¶ 5.1, 6.1). In support of this argument, he quotes a decision

11  from the District of Oregon wherein the court explained that "a state common-law claim

12  of negligence may be maintained separately from a § 1983 claim only when the

13  negligence claim is based on facts that are different from the facts on which the § 1983

14  claims are based." *Id.* (emphasis omitted) (quoting *Lifestyle Ventures, LLC v. Cnty. of*

15  *Clackamas*, No. 3:15-cv-1291-SB, 2016 WL 11394982, at *5 (D. Or. May 18, 2016)).

16      However, Redding fails to address that the District of Oregon also clarified that,

17  "while a party may not advance both negligence and constitutional claims based on the

18  same operative facts at the summary judgment stage, a party *may* do so at the initial

19

20

21      [2] In raising this argument, Redding *says* that he moves to dismiss the negligence claim
    under Rule 56. Dkt. 36 at 10. However, Redding's sole argument is directed at the amended
22  complaint. *See id.* Therefore, the Court declines to consider this argument under Rule 56.

1    pleading stage." *Lifestyle Ventures*, 2016 WL 11394982, at *5 (emphasis in original).

2    Accordingly, Redding's argument is without merit.

3         Redding next contends that Ellis's negligence claim is, in reality, an intentional

4    tort claim and should be dismissed as time-barred.[3] Dkt. 36 at 11–12. However, because a

5    plaintiff's complaint may allege both a negligence claim and an excessive force claim

6    based on the same operative facts, *see Lifestyle Ventures*, 2016 WL 11394982, at *5, the

7    Court rejects this argument.

8         For these reasons, Redding's second motion to dismiss the negligence claim is

9    DENIED.

10   **E.    Redding's Second Summary Judgment Motion on the Negligence Claim is
     Denied**

11

12        Redding again seeks summary judgment on Ellis's negligence claim alleged

13   against him. Dkt. 36 at 9–14; *see also* Dkt. 20 at 7–10. Ellis contends that Redding's

     second summary judgment motion also amounts to an improper and untimely motion for

14   reconsideration and should, therefore, be denied. Dkt. 37 at 8–9.

15        As an initial matter, Redding's motion is procedurally improper. "[D]istrict courts

16   have discretion to permit successive motions for summary judgment." *Hoffman v.*

17   *Tonnemacher*, 593 F.3d 908, 911 (9th Cir. 2010). The Ninth Circuit has "adopt[ed] the

18   sound view, expressed by several [other] circuits, that a successive motion for summary

19

20        [3] In Washington, the statutory limitations period that applies to negligence claims is three
     years. RCW 4.16.080(2). By contrast, the limitations period that applies to a claim of "assault
21   and battery" is two years. RCW 4.16.100. Redding contends that, if Ellis's negligence claim
     actually amounts to a battery claim, it is time-barred. Dkt. 36 at 11–12.

22

1    judgment is particularly appropriate on an expanded factual record." *Id.* (citing

2    *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 835 (6th Cir. 2000); *Whitford v. Boglino*,

3    63 F.3d 527, 530 (7th Cir. 1995)). A successive summary judgment motion may also be

4    appropriate when there is "'an intervening change in controlling law'" or a "need to

5    correct a clear error or prevent manifest injustice." *Whitford*, 63 F.3d at 530 (quoting

6    *Kern-Tulare Water Dist. v. City of Bakersfield*, 634 F. Supp. 656, 665 (E.D. Cal. 1986),

7    *aff'd in part and rev'd in part on other grounds*, 828 F.2d 514 (9th Cir. 1987), *cert.*

8    *denied*, 486 U.S. 1015 (1988)).

9          In moving for summary judgment, Redding raises various arguments that he failed

10   to raise when he first moved for summary judgment. He does not cite to new evidence

11   that was previously unavailable to him, assert that there has been an intervening change

12   in controlling law, or claim that the Court committed clear error in its previous ruling.

13   For this reason alone, Redding's second summary judgment motion is denied as

14   procedurally improper.

15         Even so, Redding's motion also fails on the merits. Redding contends that he is

16   entitled to summary judgment on the negligence claim because RCW 4.24.410, which

17   grants immunity to dog handlers who use police dogs in the line of duty in good faith,

18   categorically precludes negligence claims. Dkt. 36 at 12–14. He also asserts that, if the

19   evidence indicates that he acted in bad faith, Ellis's claim against him would not amount

20   to a negligence claim, but rather a time-barred "assault and battery" claim. *Id.* at 13–14.

21         Washington's dog-handler immunity statute provides: "Any dog handler who uses

22   a police dog in the line of duty in good faith is immune from civil action for damages

1    arising out of such use of the police dog or accelerant detection dog." RCW 4.24.410(2).

2    Redding claims that "[a]cts that are merely negligent do not establish a lack of 'good

3    faith' because Washington holds 'a *traditional negligence standard*--based on what the

4    [employee or entity] reasonably should have known--*is not used* to determine whether

5    immunity will attach.'" Dkt. 36 at 12–13 (emphasis and alterations in original) (quoting

6    *Dalessio v. Univ. of Washington*, No. 17-cv-0642 MJP, 2019 WL 2409607, at *5 n.5

7    (W.D. Wash. June 7, 2019), *aff'd*, 816 F. App'x 121 (9th Cir. 2020)). To this end,

8    Redding claims that Ellis cannot advance a negligence claim because, to establish an

9    absence of good faith, she would need to show that he acted intentionally, which would

10   transform her negligence claim into a time-barred intentional tort claim. *Id.* at 13–14.

11        Redding's argument fails to recognize that the immunity enumerated in RCW

12   4.24.410(2) applies to negligence cases. *See Finch v. Thurston Cnty.*, No. 45792–0–II,

13   2015 WL 1331798, at *2 n.6 (Wn. App. Mar. 24, 2015)[4] (stating that RCW 4.24.410(2)

14   "applies to negligence claims, not strict liability claims"). This suggests that the "good

15   faith" standard enumerated in this statute does not categorically preclude all negligence

16   claims against dog handlers who use police dogs in the line of duty.

17        This conclusion is also supported by the definition of "good faith," which "is a

18   state of mind indicating *honesty and lawfulness* of purpose." *Whaley v. State, Dep't of

19   Soc. & Health Servs.*, 90 Wn. App. 658, 669 (1998) (emphasis added). As explained in

20   the Court's prior order, the evidence indicates that Redding deployed the canine to "teach

21   _____

22        [4] Washington's General Rule 14.1 authorizes unpublished opinions of the Court of
     Appeals that are filed on or after March 1, 2013, to be cited as persuasive authority.

1    Jenni a lesson." Dkt. 34 at 16. This was not a lawful purpose.[5] For this reason alone, a

2    fact issue exists as to whether Redding deployed a canine in good faith.

3         Additionally, as further explained in the Court's prior order, a supplemental police

4    report indicates that Redding "deployed a canine to bite Ellis because he believed that

5    [she] would return to the residence and, considering her dress and weather conditions, it

6    would not likely have been a long wait." *Id.* at 17. But Redding did not provide *any*

7    explanation in this report as to why he could not have simply waited for Ellis to return

8    home before apprehending her. This indicates a lack of both honesty and lawfulness in

9    purpose.

10        Finally, Redding's assertion that he is entitled to statutory immunity under RCW

11   4.24.410 amounts to an affirmative defense. Therefore, to be entitled to summary

12   judgment on this defense, Redding—not Ellis—is required to establish that no genuine

13   issue of material fact exists as to whether he deployed the canine in good faith. *See*

14   *Cregan v. Fourth Mem'l Church*, 175 Wn.2d 279, 283 (2012) (en banc) (holding that an

15   immunity provided by statute amounts to an affirmative defense that the defendant bears

16

17

18   ─────────────
        [5] Whether Redding's conduct amounted to an intentional tort, negligence, or neither
19   cannot be determined beyond dispute from the record. For instance, "the 'intent' element of
     battery is satisfied where a defendant knows to a 'substantial certainty' that his actions will result
20   in the harmful or offensive touching." *Kumar v. Gate Gourmet Inc.*, 180 Wn.2d 481, 504–05
     (2014) (en banc) (quoting *Garratt v. Dailey*, 46 Wn.2d 197, 202 (1955)). It is not clear to the
     Court that, by deploying a canine to "teach Jenni a lesson," Redding acted with the requisite
21   intent to constitute a battery or with some other improper purpose consistent with Ellis's
     negligence claim, such as to frighten her. Therefore, the Court declines to rule that Ellis's
22   negligence claim is, in reality, a time-barred battery claim.

ORDER - 14

the burden of proving). His second motion for summary judgment does not cite to *any* evidence indicating that he acted in good faith.

For these reasons, Redding's summary judgment motion on Ellis's negligence claim against him is DENIED.

### III.  ORDER

Therefore, it is hereby **ORDERED** that Defendants' Federal Rules of Civil Procedure 12(b)(6) and 56 Motions to Dismiss All Claims against Pierce County and All State Claims against Redding in the Amended Complaint, Dkt. 36, is **GRANTED in part and DENIED in part**. The motion is granted insofar as it seeks dismissal of Ellis's *Monell* claim and any direct negligence claim against the County. The motion is denied insofar as it seeks dismissal of the negligence claim against Redding and the vicarious liability claim against the County.

Dated this 7th day of February, 2023.

BENJAMIN H. SETTLE
United States District Judge